BORG–WARNER CORPORATION and its Division Marvel–Schebler/Tillotson; Facet Aerospace Products Company; and Facet Enterprises, Inc., Appellants/Cross–Appellees,

v.

AVCO CORPORATION (LYCOMING DIVISION), Appellee/Cross–Appellant.

Nos. S–4381, S–4418.

Supreme Court of Alaska.

March 19, 1993.

Rehearing Denied April 15, 1993.

David T. Hunter and Michael K. Nave, Lane Powell Spears Lubersky, Anchorage, for appellants/cross-appellees.

Stephen DeLisio, Allan J. Olson and John T. Robertson, Staley, DeLisio, Cook & Sherry, Inc., Anchorage, for appellee/cross-appellant Avco Corp. (Lycoming Div.).

Michael N. White, Preston, Thorgrimson, Shidler, Gates & Ellis, Anchorage, and James L. Ackerman, Day, Berry & Howard, Boston, MA, amicus curiae for Rogers Corp.

## ORDER

IT IS ORDERED:

1. Opinion No. 3912, published on December 31, 1992, is WITHDRAWN.

2. Opinion No. 3938 is issued on this date in its place.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

After Kenneth Swanson was killed in an airplane crash, Swanson's estate filed a wrongful death action against the manufacturer of the airplane's carburetor (Borg–Warner Corporation, Marvel–Schebler/Tillotson, Facet Aerospace Products and Facet Enterprises; hereinafter "Borg–Warner"). Borg–Warner filed contribution claims against several third-party defendants, including Avco Corporation, the engine manufacturer (hereinafter "Avco"). In this appeal, Borg–Warner challenges the trial court's grant of summary judgment in favor of Avco.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In September 1986 Kenneth Swanson and his passenger were killed when Swanson's airplane crashed near Umiat on the North Slope.[1] Two years after the accident, Swanson's estate filed a wrongful death action against the carburetor manufacturer, Borg–Warner, and an aircraft mechanic, Edward DePriest. None of these parties sought a jury trial.

In March 1989 the trial court held a pretrial conference and scheduled trial to begin the week of November 20, 1989. In July Borg–Warner moved to join third-party claims for contribution against Avco, Piper, Petersen and Rogers. Swanson opposed joinder of the third-party defendants, claiming that it would significantly delay trial and prejudice his case. After a hearing, the court granted Borg–Warner's motion to join the third-party defendants, but

ordered a separate trial for the contribution claims.

After Borg–Warner served Piper, Avco, Petersen and Rogers, two of the third-party defendants, Avco and Piper, requested a jury trial. In September 1989 Borg–Warner moved the court to rejoin the contribution claims to the first trial on the grounds that the Tort Reform Act, AS 09.-17.010–.900, mandates a single jury trial of the first-party and third-party claims. Swanson, Piper, Rogers and Avco opposed the motion, arguing, *inter alia*, that the complex nature of the issues and the imminence of the Swanson trial made a single trial impracticable. The court denied Borg–Warner's motion.

In November 1989 Swanson's claims were tried before Judge Jay Hodges. Swanson argued that a defective condition of the aircraft carburetor had caused a sudden loss of power which resulted in the crash.[2] Borg–Warner's primary defense was that the crash was caused by pilot error and adverse weather conditions. Alternatively, Borg–Warner claimed that if the carburetor float did, in fact, absorb fuel, this resulted from Swanson's use of auto-gas, contrary to Avco's and Piper's specific warnings. Although Borg–Warner presented some evidence of the alleged fault of the third-party defendants, the trial was conducted under the assumption that contribution issues would be addressed in a second trial.

In February 1990 the trial court issued its "Memorandum Decision and Findings of Fact, Conclusions of Law." The court found that the legal cause of the accident was the defective carburetor.[3] The court also found that the use of auto-gas was not

1. Swanson's airplane was manufactured by Piper Aircraft Corporation ("Piper"). The engine was manufactured by Avco Corporation ("Avco"). The engine was equipped with a carburetor manufactured by Marvel–Schebler, a division of Borg–Warner ("Borg–Warner"). The carburetor float was manufactured by Rogers Corporation ("Rogers"). At the time of the accident, the plane was operating on auto-gas, pursuant to a Supplemental Type Certificate issued by Petersen Aircraft ("Petersen").

2. Swanson presented evidence showing (1) that Borg–Warner had become aware of problems

with the Rogers composite float as early as 1966; (2) that Borg–Warner had determined in the 1970s that these problems resulted from a manufacturing defect which caused the carburetor float to absorb fuel, become heavy and sink; (3) that Borg–Warner concealed this information from the FAA, Avco, Piper and the general public, and continued to assert that the carburetor problems were caused by the use of auto-gas in aircraft.

3. The trial court determined that the pilot and airplane mechanic were not negligent.

a factor which contributed to the absorption of fuel by the float. The court concluded that Borg–Warner's concealment of the manufacturing defect constituted "outrageous conduct and a reckless disregard of the rights of others." The court found Borg–Warner jointly and severally liable for $1,669,460 in compensatory damages,[4] and also awarded Swanson $5,008,380 in punitive damages.

Following issuance of the court's memorandum decision, but before entry of judgment, Borg–Warner and Swanson settled for approximately $4.5 million. Borg–Warner and Swanson then stipulated to dismiss Swanson's claims with prejudice. After the court ordered Swanson's claims dismissed pursuant to the parties' stipulation, Borg–Warner unsuccessfully moved for the withdrawal of the court's Memorandum Decision.

Avco, Piper and Rogers [5] all moved for summary judgment on Borg–Warner's third-party claims, arguing, *inter alia*, that Borg–Warner had no right to contribution under AS 09.16.010(c).[6] The court granted Avco's and Piper's motions, finding that Borg–Warner, as a "wilful and wanton" tortfeasor, had no right to contribution from Avco and Piper and that Borg–Warner was collaterally estopped from relitigating this issue. However, the court denied Rogers' motion because it concluded that Rogers' conduct may have been as culpable as Borg–Warner's.

This appeal followed.[7]

## II. DISCUSSION

On appeal, Borg–Warner contends that the trial court erred in applying collateral estoppel in the absence of a final judgment. It further argues that the trial court erred in ordering separate trials in the first place and that Borg–Warner did not have a "full and fair opportunity" to litigate its third-party claims. Finally, Borg–Warner asserts that the trial court erroneously interpreted "intentional" (as used in AS 09.16.-010(c)) to include "wilful and wanton" conduct. Avco cross-appeals on the issue of Borg–Warner's status as an "intentional" or "wilful" tortfeasor.

### A. *Propriety of Separate Trials*

■ Borg–Warner claims that AS 09.-17.080 (1986) requires a single trier of fact to make a single allocation of comparative fault among all parties.[8] We disagree.

At the time of the accident, AS 09.17.080 provided:

(a) In all actions involving fault of more than one party to the action, including third-party defendants and persons who have been released under AS 09.17.090, the court, unless otherwise agreed by all parties, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings, indicating

(1) the amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and

(2) the percentage of the total fault of all of the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under AS 09.17.090.

(b) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party

---

**4.** Under the version of AS 09.17.080(d) in effect at the time of the accident, a tortfeasor was jointly and severally liable unless the tortfeasor was less than 50% at fault. The trial court found that Borg–Warner was at least 50% at fault, but did not allocate a specific percentage of fault to any of the third-party defendants.

**5.** Apparently Petersen also moved for summary judgment. However, neither his motion nor the court's subsequent ruling is included in the record on appeal.

**6.** In 1986, AS 09.16.010(c) provided that "[t]here is no right of contribution in favor of any tort-

feasor who has intentionally caused or contributed to the injury or wrongful death."

**7.** Piper is not a party to this appeal because in July 1991 the United States Bankruptcy Court entered an automatic stay order pursuant to 11 U.S.C. § 362.

**8.** The interpretation of a statute is a question of law, subject to this court's independent judgment on review. *Norton v. Alcoholic Beverage Control Bd.*, 695 P.2d 1090, 1092 (Alaska 1985).

at fault, and the extent of the causal relation between the conduct and the damages claimed. The trier of fact may determine that two or more persons are to be treated as a single party if their conduct was a cause of the damages claimed and the separate act or omission of each person cannot be distinguished.

(c) The court shall determine the award of damages to each claimant in accordance with the findings, subject to a reduction under AS 09.17.090, and enter judgment against each party liable. The court also shall determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault.

(d) The court shall enter judgment against each party liable on the basis of joint and several liability, except that a party who is allocated less than 50 percent of the total fault allocated to all the parties may not be jointly liable for more than twice the percentage of fault allocated to that party.[9]

Although a single trial allocating fault among all potentially liable parties may promote judicial economy, nothing in the legislative history of AS 09.17.080 indicates that the legislature intended to require a single trial for first- and third-party claims. In our opinion, the traditional two-step system of first establishing liability and then seeking contribution is not inconsistent with the comparative negligence principles underlying the Tort Reform Act. Although one complete and comprehensive hearing is preferable where complex issues are intertwined, *see Shanley v. Callanan Indus., Inc.,* 54 N.Y.2d 52, 444 N.Y.S.2d 585, 588, 429 N.E.2d 104, 107 (1981), in certain circumstances a separate trial allocating fault among first- and third-party defendants is appropriate.[10]

■ Alaska Civil Rule 42(b) provides that a trial judge may order a separate trial of third-party claims "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." In this case, Borg–Warner did not seek to join the third-party defendants until approximately three months before the scheduled trial date. Given the need for additional discovery, there is a strong probability that ordering a single trial in this case would have significantly delayed the Swanson trial. We therefore conclude that Judge Hodges did not abuse his discretion in ordering separate trials.

### B. Construction of AS 09.16.010(c)

■ The Alaska legislature adopted the Uniform Contribution Among Tortfeasors Act in 1970.[11] Ch. 80, § 1, SLA 1970

**9.** Subsection (d) was changed effective March 5, 1989 to provide:

> The court shall enter judgment against each party liable on the basis of several liability in accordance with the party's percentage of fault.

Because this cause of action arose in September 1986, this amendment does not apply to this case.

**10.** Borg–Warner's reliance on our decision in *Lake v. Constr. Mach., Inc.,* 787 P.2d 1027 (Alaska 1990), is misplaced. In *Lake,* an employee was injured when he fell from a manlift in the course of his employment. The worker subsequently brought a products liability action against the manufacturer, the distributor and several intermediate vendors of the manlift. The distributor joined the employer as a third-party defendant under an express indemnity agreement. Before the trial court, the distributor asserted that the finder of fact was required to attribute negligence among all the parties allegedly responsible for the worker's injury, including the employer, pursuant to the rule of modified joint and several liability found in AS 09.17.080(d). The worker sought to strike this defense on the grounds that the exclusive liability provision of the Workers' Compensation Act precluded the trier of fact from considering the negligence of the employer. *Id.* at 1028.

We held that the distributor could not reduce its total liability to the worker in proportion to the percentage of any negligence attributable to the third-party employer under the exclusive liability provision, but that the distributor was entitled to bring in evidence of the employer's negligence to prove either that the employer was entirely at fault or that the employer's fault was a superseding cause of the injury. *Id.* at 1029, 1031. We did *not* hold, as Borg–Warner suggests, that third-party claims *must* be joined to the underlying suit to allow the trier of fact to make a single allocation of fault.

**11.** AS 09.16 was repealed effective March 5, 1989. Because this cause of action arose in

(codified as amended at AS 09.16.010–.060). Alaska Statute 09.16.010(c) (1983) provides:

> There is no right of contribution in favor of any tortfeasor who has intentionally caused or contributed to the injury or wrongful death.

We hold that this statutory bar applies only to tortfeasors who act with the specific intent to cause the resultant harm.[12]

[redacted] We adopt this interpretation of "intentional" for two reasons. First, the legislature deleted the "wilfully or wantonly" language contained in the uniform act from which AS 09.16.010(c) was drawn.[13] In the absence of any legislative history indicating otherwise, we believe that this omission indicates that the legislature rejected a broader application of the statutory bar. *See* 2A Norman J. Singer, *Sutherland's Statutes and Statutory Construction* § 48.04, at 22 (1992) (where specific language is omitted by the legislature, this is an indication that the legislature rejected this language).

[redacted] Second, we conclude that an expansive interpretation of "intentional" is incompatible with the comparative negligence principles introduced into the law of contribution by the enactment of the Tort Reform Act in 1986. Alaska Statute 09.17.-900 defines "fault" to include "acts or omissions that are in any measure *negligent or reckless* toward the person or property of the actor or others, or that subject a person to strict tort liability." (Emphasis added). In allocating a percentage of the total fault to each potentially liable party, AS 09.17.080(b) directs the trier of fact to consider *"the nature of the conduct* of each party at fault" as well as the degree of the causal tie between the conduct and the damages claimed. (Emphasis added). The Tort Reform Act clearly contemplates a relative allocation of fault between all unintentional tortfeasors, whether negligent, grossly negligent or wilful and wanton.[14]

[redacted] When two statutes deal with the same or related subject matter, we strive to

September 1986, the circumstances of the act's repeal is of no consequence here.

Although the parties do not argue this point, it seems evident that much of the contribution act was superseded by the enactment of the Tort Reform Act in 1986. Since the Tort Reform Act became effective before the accident underlying this case, it applies to this case. Whereas the contribution act allocated damages among tortfeasors on a per capita basis, the Tort Reform Act does so "in accordance with the respective percentages of fault." AS 09.17.080(c). Since AS 09.17.080(c) governs this case, it would seem to follow that it is the definition of fault under the Tort Reform Act which presents the critical question in this case rather than the meaning of "intentionally caused" under the contribution act. However, as explained below, the result is the same in either case.

**12.** Statutory construction begins with an analysis of the language of the statute construed in view of its purpose. *Peninsula Marketing Ass'n v. State,* 817 P.2d 917, 920 (Alaska 1991). The plainer the language of the statute, the more convincing any contrary evidence must be. *Id.* at 922.

**13.** The equivalent provision to AS 09.16.010(c) in the Uniform Act reads:

> There is no right of contribution in favor of any tortfeasor who has intentionally [wilfully or wantonly] caused or contributed to the injury or wrongful death.

Uniform Contribution Among Tortfeasors Act, § 1(c), 12 U.L.A. 65 (1955).

**14.** The Supreme Court of California discussed the issue whether comparative negligence should be applied where a defendant was found to have acted in a wilful and wanton manner in *Li v. Yellow Cab Co. of Cal.,* 13 Cal.3d 804, 119 Cal.Rptr. 858, 873, 532 P.2d 1226, 1241 (1975). The *Li* court stated:

> Finally there is the problem of the treatment of willful misconduct under a system of comparative negligence.... The thought is that the difference between willful and wanton misconduct and ordinary negligence is one of kind rather than degree in that the former involves conduct of an entirely different order, and under this conception it might well be urged that comparative negligence concepts should have no application when one of the parties has been guilty of willful and wanton misconduct. It has been persuasively argued, however, that the loss of deterrent effect that would occur upon application of comparative fault concepts to willful and wanton misconduct as well as ordinary negligence would be slight, and that a comprehensive system of comparative negligence should allow for the apportionment of damages in all cases involving misconduct which falls short of being intentional.

*Id.* (footnote omitted). We find the latter logic more persuasive.

construe them as harmoniously as possible. *See State, Dep't of Highways v. Green,* 586 P.2d 595, 602–03 & n. 24 (Alaska 1978) (interpretation of one statutory provision is properly influenced by content of another provision addressing similar purposes or objects); *Watt v. Alaska,* 451 U.S. 259, 266–67, 101 S.Ct. 1673, 1677–78, 68 L.Ed.2d 80 (1981) (although the more recent of two inconsistent statutes may govern, statutes are not to be read as being inconsistent unless the sense and purpose of each statute cannot be preserved otherwise). By construing AS 09.16.010(c) to bar only "intentional" tortfeasors from seeking contribution, we preserve the sense and purpose of both acts.

We conclude that the trial court erred in ruling that Borg–Warner, as a "wilful and wanton" tortfeasor, was barred from seeking contribution under AS 09.16.010(c).

### C. *Collateral Estoppel*

▮▮▮▮ Although Borg–Warner is not barred from seeking contribution under AS 09.16.010(c), we hold that Borg–Warner is bound by Judge Hodges' findings concerning the nature of its conduct toward Swanson because this issue was fully litigated in the *Swanson* trial.

▮▮▮▮ Under Alaska law, the following circumstances must exist before collateral estoppel may apply:

1. The plea of collateral estoppel must be asserted against a party or one in privity with a party to the first action;

2. The issue to be precluded from relitigation by operation of the doctrine must be identical to that decided in the first action;

3. The issue in the first action must have been resolved by a final judgment on the merits.

*Murray v. Feight,* 741 P.2d 1148, 1153 (Alaska 1987). There is no question that the "party identity" and "identity of issue" requirements are satisfied here. Thus we must decide whether the court's memoran-

dum decision is sufficiently "final" for the purposes of collateral estoppel.[15]

In *Briggs v. State, Dep't of Pub. Safety,* 732 P.2d 1078 (Alaska 1987), this court observed:

For the purposes of issue preclusion, "final judgment" includes "any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Restatement (Second) of Judgments § 13 (1982). Factors supporting a conclusion that a decision is final for this purpose are "that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal." Restatement (Second) of Judgments § 13 comment g (1982).

*Id.* at 1082 (citations omitted); *see, e.g., Rapoport v. Tesoro Alaska Petroleum Co.,* 794 P.2d 949, 951–52 (Alaska 1990) (a judgment which has been appealed is still "final or firm" for the purposes of issue preclusion).

▮▮▮▮ Borg–Warner argues that collateral estoppel should not apply here because the case was settled before final judgment was entered. Borg–Warner emphasizes the fact that the court specifically dismissed Swanson's claims "without entry of judgment." Relying on *Greater Anchorage Area Borough v. City of Anchorage,* 504 P.2d 1027 (Alaska 1972), *overruled on other grounds by City & Borough of Juneau v. Thibodeau,* 595 P.2d 626, 628–29 (Alaska 1979), Borg–Warner concludes that the court's "decretal" language should control. In *Greater Anchorage Area Borough,* we decided that when determining whether a judgment is "final" for the purposes of appeal, the trial court should look to the substance and effect, rather than form, of the rendering court's judgment and focus primarily on the operational or "decretal" language therein. 504 P.2d at 1030–31. A "final" judgment is one that disposes of the entire case and ends the litigation on the merits. *Id.* Since the court's memorandum decision is not appeal-

---

**15.** The applicability of the doctrine of collateral estoppel is a question of law subject to independent review. *Rapoport v. Tesoro Alaska Petroleum Co.,* 794 P.2d 949, 951 (Alaska 1990).

able without entry of judgment, Borg–Warner concludes that the memorandum decision is not sufficiently "final" for collateral estoppel to apply.

 In our opinion, the finality requirement does not necessarily require the entry of a final judgment.[16] The Fifth Circuit has discussed in great detail the "finality" requirement for collateral estoppel under the federal rules. *Chemetron Corp. v. Business Funds, Inc.*, 682 F.2d 1149, 1190–92 (5th Cir.1982), *vacated on other grounds*, 460 U.S. 1007, 103 S.Ct. 1245, 75 L.Ed.2d 476 (1983), *cert. denied sub nom. Binliff v. Chemetron Corp.*, 460 U.S. 1013, 103 S.Ct. 1254, 75 L.Ed.2d 483 (1983). *Chemetron* discusses the effect of earlier securities fraud litigation on a current action involving the same defendant, Bignall, but a different plaintiff. At the close of the earlier trial, the judge filed a lengthy memorandum decision detailing his findings of fact and conclusions of law, and awarded substantial money damages to plaintiff Cosmos Bank. Before final judgment was entered, the parties settled the case. Although the judge refused to approve a proposed order preventing the use of the memorandum decision for collateral estoppel purposes, it withdrew the memorandum decision when it dismissed the case with prejudice. *Id.* at 1187–88. In the later, related action, Chemetron sued Bignall and sought to collaterally estop him from relitigating certain factual issues adjudicated adversely to him in the *Cosmos Bank* litigation. *Id.* at 1188.

The trial court denied Chemetron's proposal, but the Fifth Circuit reversed, observing that

the finality requirement does not necessarily demand the ministerial act of executing a judgment. It does not elevate form over substance in that fashion—the accurate definition of "finality" in the offensive collateral estoppel context is "fully litigated."

*Id.* at 1191. The Fifth Circuit also noted that finality in the collateral estoppel context "may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Id.* (quoting *Zdanok v. Glidden Co., Durkee Famous Food Div.*, 327 F.2d 944, 955 (2d. Cir.1964)). The Fifth Circuit concluded that the decision to apply collateral estoppel is within the discretion of the trial court, although this discretion must be tempered by principles of fairness in light of the circumstances in each particular case. *Id.*

 We adopt the Fifth Circuit's reasoning in *Chemetron* and conclude that appealability is not a necessary prerequisite to "finality" for the purpose of collateral estoppel.[17] In the absence of an appealable decision, the test is whether the issue has been "fully litigated."[18] In this case, the Swanson claims were tried before Judge Hodges between November 21 and December 5, 1989. Judge Hodges filed a 74–page memorandum decision and his findings concerning the nature of Borg–Warner's conduct were necessary and essential to that decision. While the parties were disputing the wording of the final judgment order, they agreed to settle the case. Judge Hodges specifically declined to withdraw the memorandum decision af-

---

16. In so holding, this court adopts the position of the Restatement (Second) of Judgments § 13.

17. The United States Supreme Court vacated and remanded the original panel action in *Chemetron.* The panel opinion on remand was in turn ordered reheard *en banc* and thus vacated. After the case was taken *en banc,* the parties settled and the litigation was terminated. For this reason, the Fifth Circuit does not regard *Chemetron* as binding precedent. *Avondale Shipyards, Inc. v. Insured Lloyd's,* 786 F.2d 1265, 1273 n. 11 (5th Cir.1986). The Fifth Circuit has also been reluctant to extend *Chemetron* beyond its facts. *Id.* We find the *Cheme-*

*tron* analysis compelling and its application to this case proper.

18. Borg–Warner argues that applying collateral estoppel in cases such as this will undermine Alaska's policy favoring settlements. We disagree. Preventing duplicative litigation by the application of collateral estoppel also serves the interests of judicial economy. *See Chemetron,* 682 F.2d at 1190 (observing that the reason for policy favoring settlements is that they avoid litigation; this policy does not apply when the entire trial had run its course and only the entry of adverse judgment remains).

ter settlement. It is hard to imagine any case more "fully litigated" in the absence of a final judgment.

Thus Borg–Warner is precluded from relitigating the nature of its conduct (i.e., that its conduct was "outrageous" and in "reckless disregard of the rights of others"). However, Borg–Warner is not bound by the trial court's finding that it was more than 50% at fault. The issue of relative fault between Borg–Warner and the third-party defendants was not properly before the trial court in the *Swanson* trial. *See Bignell v. Wise Mechanical Contractors*, 720 P.2d 490, 494 (Alaska 1986) (to warrant collateral estoppel, an issue must have been actually litigated and determined, and the determination must have been essential to the court's decision); *Shanley v. Callanan Indus., Inc.*, 54 N.Y.2d 52, 444 N.Y.S.2d 585, 587, 429 N.E.2d 104, 106 (1981) (for collateral estoppel to apply, it must be clear that a previous determination squarely addressed and specifically decided the issue; where nature of the decision makes it *not* clear whether litigant was afforded his day in court, then collateral estoppel is inappropriate).

### III. CONCLUSION

For the above reasons, we hold that the trial court erred in construing AS 09.16.-010(c) to bar "wilful and wanton" tortfeasors as well as "intentional" tortfeasors from seeking contribution. Such a broad reading is inconsistent with the principles of comparative negligence underlying the 1986 Tort Reform Act (AS 09.17). We therefore remand this case to the trial court for trial on Borg–Warner's contribution claims. In this trial, Borg–Warner is not bound by the trial court's calculation of its relative share of fault since this issue was not properly before the court in the *Swanson* trial. However Borg–Warner is bound by the trial court's findings concerning its conduct toward Swanson because Borg–Warner had a full and fair opportunity to litigate this issue.

AFFIRMED in part, and REMANDED in part for proceedings consistent with this opinion.