NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| In the Matter of the Estate of ) | |
| ) | Supreme Court No. S-15539 |
| WAYNE COLYER FIELDS. ) | |
| ) | Superior Court No. 4FA-91-00041 PR |
| ) | |
| ) | MEMORANDUM OPINION |
| ) | AND JUDGMENT* |
| ) | |
| ) | No. 1580 – April 20, 2016 |
| _____ ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael P. McConahy, Judge.

Appearances: Robert A. Sparks, Law Office of Robert A. Sparks, Fairbanks, for Appellants. Heidi M. Holmes, Burns & Associates, P.C., Fairbanks, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

1. In the 1930s Wayne Colyer Fields, an Alaska resident, purchased six acres of waterfront property in Washington State.[1] He executed a will in 1980 that left real and personal property to "The Wayne Colyer Fields Trust," but no trust was ever

---

\* Entered under Alaska Appellate Rule 214.

[1] *In re Estate of Fields* (*Fields I*), 219 P.3d 995, 999 (Alaska 2009).

created.[2]  In 1987 he conveyed the Washington property to his four adult children: Elizabeth, Joseph, Wayne, Jr., and Charles.[3]  Following Wayne's death in 1990, an issue arose between the children whether the Washington property had been conveyed to them unconditionally or in trust.[4]  In 1999 Charles, the executor, decided to create the trust referenced in his father's will.[5]  In 2002 he asked his siblings to execute quitclaim deeds to transfer their interests in the Washington property to the estate so that a trust could be created, the property conveyed to it, and the estate closed.[6]  They refused.[7]

In 2004 Charles asked the superior court to recognize the existence of the family trust and to order his siblings to transfer their interests in the Washington property to that trust.[8]  In 2005 the superior court imposed "a constructive trust to maintain the [Washington] property for the benefit of decedent's descendants" and ordered Wayne's children to convey their interests to a formal trust.[9]  They appealed.[10]  In 2009 we affirmed the creation of the trust, though we remanded for further consideration of

---

[2]  *Id.*

[3]  *Id.*

[4]  *Id.*

[5]  *Id.* at 1000.

[6]  *Id.*

[7]  *Id.*

[8]  *Id.* at 1000-01.

[9]  *Id.* at 1002.

[10]  *Id.*

various due process issues.[11]  After those due process issues were addressed by the superior court, Elizabeth, Joseph, and Wayne, Jr. again appealed, and we affirmed.[12]

2. In 2013 Charles filed a "Motion for Payment of Taxes," seeking reimbursement from Joseph and Wayne, Jr. for their share of the property taxes incurred by the Washington property, which had been paid by Charles for tax years 1987 — the year the interests had been conveyed — through 2013.[13]  The superior court granted Charles's motion and entered judgment against Joseph and Wayne, Jr. for $12,638 each. Joseph and Wayne, Jr. appeal, and the parties are now before us for the third time.  In their opposition to Charles's motion for payment of taxes, Joseph and Wayne, Jr. argued that Charles's motion was barred because "Charles had the opportunity to litigate his property tax claims" previously both in probate and civilly.[14]

3. The superior court judge hearing the probate matter held that this argument was without merit because there was no prior "ruling regarding taxes that preclude[d] the matter from being decided in this case."  Ultimately the court found "no reason why the siblings should not pay property taxes on property that they were forced to quitclaim to the Fields'[s] family trust."

---

[11]     *Id.* at 1016.

[12]     *Fields v. Fields* (*Fields II*), No. S-13851, 2012 WL 2477895, at *2 (Alaska June 27, 2012).

[13]     Elizabeth had paid her share of the taxes and was not subject to Charles's motion.

[14]     In addition to this probate case, there was a 2008 civil case pitting three sets of parties against each other:  Joseph and Wayne, Jr. against Charles, individually and as trustee of the trust; the trust against Joseph and Wayne, Jr.; and Charles, as trustee, against Elizabeth.  That case principally involved breach of contract and fiduciary duties and was decided on summary judgment.  It was not appealed.

4.      On appeal Joseph and Wayne, Jr. argue that Charles's motion is barred by the doctrine of res judicata, which "provides that a final judgment in a prior action bars a subsequent action if the prior judgment was (1) a final judgment on the merits, (2) from a court of competent jurisdiction, (3) in a dispute between the same parties . . . about the same cause of action."[15]

"A 'final' judgment is one that disposes of the entire case and ends the litigation on the merits,"[16] or "extinguishes all claims with respect to all or any part of the transaction, or series of connected transactions out of which the previous action arose."[17] "What factual grouping constitutes a transaction is determined by whether the facts are related in time, space, origin, or motivation, and whether they form a convenient trial unit."[18]

Joseph and Wayne, Jr. argue that Charles could have raised the issue of taxes in earlier actions within this probate case, and he was therefore barred from raising it. But there were no "earlier actions" because the probate case remains open.[19] And the

---

[15]     *Plumber v. Univ. of Alaska Anchorage*, 936 P.2d 163, 166 (Alaska 1997). Whether res judicata applies is a question of law that we review de novo. *Matanuska Elec. Ass'n v. Chugach Elec. Ass'n*, 152 P.3d 460, 465 (Alaska 2007).

[16]     *Borg-Warner Corp. v. Avco Corp. (Lycoming Div.)*, 850 P.2d 628, 634 (Alaska 1993). In the related context of collateral estoppel, we have held that "the finality requirement does not necessarily require the entry of a final judgment." *Id.* at 635.

[17]     *Finch v. Greatland Foods, Inc.*, 21 P.3d 1282, 1290 (Alaska 2001) (quoting *Tolstrup v. Miller*, 726 P.2d 1304, 1306 (Alaska 1986)).

[18]     *Pister v. State, Dep't of Revenue*, 354 P.3d 357, 362 (Alaska 2015) (quoting *Plumber*, 936 P.2d at 167).

[19]     *See Fields v. Fields*, No. 4FA-91-00041 PR (Alaska Super.) (demonstrating
(continued...)

only final judgment that has been entered since the litigation began in 1991 is the one that led to this appeal, the judgment Judge McConahy entered on September 8, 2014 against Joseph and Wayne, Jr. for the $12,638 each owed to Charles for their share of the property taxes paid by Charles. Res judicata therefore does not bar Charles's motion for taxes.

Although Joseph and Wayne, Jr. argue that Charles could have moved for taxes earlier in this probate case or in the 2008 civil case,[20] res judicata only prohibits the litigation of claims after final judgment has entered. Since final judgment was not entered until after Charles filed his motion, res judicata does not bar Charles's motion for payment of taxes.

5.	Joseph and Wayne, Jr. also assert that Charles's motion for payment of taxes is barred by either the three-year statute of limitations on contracts (AS 09.10.053) or the two-year statute of limitations on torts (AS 09.10.070).[21] They

---

[19]	(...continued) open case status as of the date of this MO&J).

[20]	Charles did not file his motion until October 2013. Perhaps he could have done so earlier, though it was not until September 2009 that we affirmed the creation of the trust. *Fields I*, 219 P.3d 995, 1016 (Alaska 2009). By the time Charles had filed his motion, the conveyance of Joseph's and Wayne, Jr.'s interests to the trust had still not been recorded. So even had Charles raised the issue of taxes earlier, those tax obligations would have continued to accrue, at least until the interests were deeded to the trust. As it turns out, the clerk signed the clerk's deed conveying Joseph's and Wayne, Jr.'s interests to the trust the same month Charles filed his motion; it was just the recording that was still outstanding.

[21]	Charles contends that this argument has been waived because it was not raised in the superior court and cannot be raised for the first time on appeal. *See Padgett v. Theus*, 484 P.2d 697, 700 (Alaska 1971) ("Ordinarily an issue which was not raised in the trial court will not be treated on appeal."). He argues that the only time Joseph and
(continued...)

argue that 2004, when Charles sought to impose a constructive trust on the Washington property, is the latest date that Charles could claim ignorance of Joseph's and Wayne, Jr.'s refusal to pay taxes on the property. They therefore contend that any potentially applicable statute of limitations began to run in 2004 and expired well before Charles moved for the payment of taxes in 2013.

If we assume that either AS 09.10.053 or AS 09.10.070(a) applies here, Joseph and Wayne, Jr. fail to explain why the statutory period began to run in 2004 rather than 2012 or 2013. They argue that "Charles was well aware of the breach of [the] agreement relating to the ownership of the Washington real property [in 2004]," and that the applicable statute of limitations began to run at that time.[22]

Although Charles sought to impose a constructive trust in 2004, the trust was not ordered until 2005, and that order was not affirmed until 2009 in *Fields I*.[23] And parts of that original order were remanded and remained unresolved until 2012 in *Fields II*.[24] When Charles filed his motion in 2013, Joseph's and Wayne, Jr.'s personal interests in the Washington property had only been transferred to the trust some ten days earlier, and the deeds had not yet been recorded. Thus it is not clear why the statute of limitations began to run in 2004 or 2005 and not in 2009, 2012, or even 2013. We

---

[21]    (...continued)
Wayne, Jr. raised this argument was in their motion for reconsideration of the order granting payment of taxes to Charles; this argument did not appear in their opposition to his original motion. But we conclude that they did raise this issue, albeit briefly, in oral argument on the motion for payment of taxes, and so we consider it here.

[22]    *Fields I*, 219 P.3d at 1015-16.

[23]    *Id.* at 1016.

[24]    *Fields II*, No. S-13851, 2012 WL 2477895, at *2 (Alaska June 27, 2012).

conclude that court did not err when it found that Charles's claim was not barred by the statute of limitations.

6.    Finally, Joseph and Wayne, Jr. contend that "Judge McConahy indicated in his order that he . . . intended to punish [them] for th[eir] failure . . . to voluntarily convey the Washington real property to the Fields Family Trust by imposing liability on them for $12,638 each in real property taxes for the Washington real property from 1987-2013." They argue that "[t]o the extent that Judge McConahy's ruling could be construed as a sanction for contempt, the assessment of a penalty of $12,638, where Charles had failed to introduce any evidence that he, the estate[,] or the Fields Family Trust had suffered any damages, was an abuse of discretion and violated AS 09.50.040."[25]

We disagree with Joseph's and Wayne, Jr.'s characterization of Judge McConahy's intent. On the page in the record that Joseph and Wayne, Jr. cite, Judge McConahy says:

> The main and simple fact, borne out by all the pleadings, is that the siblings vigorously, zealously, and consistently maintained that *no* trust existed and the Washington property was, or should be, held by them in their respective, proportional capacity. . . . It is disingenuous at the most

---

[25]    AS 09.50.040 provides:

> If a loss or injury to a party in an action or proceeding has been caused by the contempt, the court, in addition to the punishment imposed for the contempt, may give judgment in favor of the party aggrieved and against the person guilty of contempt for a sum of money sufficient to indemnify that party and to satisfy the costs and disbursements of that party. The judgment and the acceptance of that amount is a bar to an action or proceeding by the aggrieved party for the loss or injury.

> charitable for . . . Joseph and Wayne, [Jr.] to contend that the trust is solely responsible for the taxes during the time it was their refusal to convey their interest to the trust that kept title . . . from fully being vested in the trust. The court finds that the siblings each owe a one-quarter portion of the taxes on the Washington property for the period of time they each held title in their individual capacity. (Emphasis in original.)

The superior court's ruling gives no indication that it was punishing Joseph and Wayne, Jr. by sanctioning them for contempt. It is clear that the court's order simply required each sibling to repay Charles for the taxes Charles had paid on their behalf; the order was not punitive in nature. Joseph's and Wayne, Jr.'s reliance on AS 09.50.040 is therefore inapposite, and the superior court did not abuse its discretion in requiring Joseph and Wayne, Jr. to pay their share of the property taxes.

7.    We AFFIRM the superior court's judgment against Joseph and Wayne, Jr.