Pamela Francis McLAUGHLIN, Lorimar Lance McLaughlin, and Larry Compton, Trustee, Appellants,

v.

Ken LOUGEE; Hughes, Thorsness, Gantz, Powell & Brundin; and its successor in interest, Hughes, Thorsness, Powell, Huddleston & Bauman, L.L.C., Appellees.

No. S–11423.

Supreme Court of Alaska.

June 9, 2006.

Michael W. Flanigan, Chris Bataille, Walther & Flanigan, Anchorage, for Appellants.

William M. Bankston, Chris D. Gronning, Bankston, Gronning, O'Hara, Sedor, Mills, Givens & Heaphey, P.C., Anchorage, for Appellees.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

MATTHEWS, Justice.

The question in this case is whether a defendant against whom a judgment in a tort case has been entered can later file an action against a third person who was not a party to the original action in order to require the third person to pay a part of the judgment. The superior court held that such an action may not be maintained because (1) under the law applicable when the alleged tortious conduct occurred statutory contribution had been eliminated and (2) a defendant seeking to allocate fault to a third party can do so only in the original action. We disagree because the applicable law did not preclude common law contribution claims against defendants whose responsibility was not considered in an original action, nor did it require that all claims seeking to allocate fault be brought in a single action.

1.  Elements of the current case are also discussed in *Compton v. Chatanika Gold Camp Props.,* 988

## I.  FACTS AND PROCEEDINGS

Appellants are Pamela and Lorimar McLaughlin, and Larry Compton, the trustee in bankruptcy of the McLaughlins' bankrupt estate. They sued attorney Ken Lougee and his firm, Hughes, Thorsness, Gantz, Powell & Brundin, and its successor firm, as writ of execution assignees of claims belonging to their former attorney Arthur Robson. In this opinion we collectively refer to the appellants as the McLaughlins and the appellees as Hughes Thorsness. The superior court stated the underlying facts of the case as follows: [1]

Arthur Lyle Robson ("Robson") represented the McLaughlins between 1990 and 1995 in a series of legal actions concerning a property formerly owned by the McLaughlins. The McLaughlins lost title to their property through foreclosure due to malpractice on the part of Robson. Robson however did not disclose to the McLaughlins that they had lost viable title. During the pendency of that litigation, Robson also represented the McLaughlins in their negotiations with a foreign investor, Okumura, who invested monies based on Robson's misrepresentations as to the legal status of the property. Robson also represented the McLaughlins in a subsequent lawsuit brought by Okumura against the McLaughlins based on misrepresentations made during the negotiations between the parties. Although Robson knew he was responsible for the liability of the McLaughlins based on his misrepresentations, Robson defended the McLaughlins without bringing out his culpability for the misrepresentations. As a result of Robson's conduct, the McLaughlins were found liable to Okumura in the amount of $1,008,536.05. The McLaughlins then filed for bankruptcy on June 23, 1993, and Robson continued to represent them.

After Okumura obtained a judgment against the McLaughlins, Okumura then brought a similar action against Robson alleging misrepresentation, which the court in that case found had occurred as a mat-

P.2d 598 (Alaska 1999).

ter of law. In this suit, defendant law firm Hughes Thorsness represented Robson.

It is during the course of this representation that the McLaughlins allege Hughes Thorsness committed acts that constituted an illegal co-conspiracy with Robson to deprive the McLaughlins of their legal rights. This claim is based at least in part on the allegation that Hughes Thorsness, as part of a scheme to defraud the McLaughlins, prepared for Robson's signature (and without the McLaughlins' informed consent) a pleading in the McLaughlins' bankruptcy withdrawing the McLaughlins' motion to clarify that they still owned legal malpractice claims against Robson. Plaintiffs allege that Hughes Thorsness was aware that Robson could not ethically agree on behalf of the McLaughlins to withdraw their motion claiming that they still had claims against Robson, yet Hughes Thorsness prepared documents for Robson's signature to do just that. Plaintiffs allege that the purpose of Hughes Thorsness's actions were to further Robson's fraudulent scheme to avoid personal liability for his actions. Although the withdrawal of the motion was later reversed and the Bankruptcy Court eventually held that Robson could be sued by the McLaughlins and the Bankruptcy Estate, Robson's malpractice liability insurance had been exhausted due to the settlement of Okumura's claims against Robson as negotiated by Hughes Thorsness. Plaintiffs claim that as a proximate result of the combined conduct of Robson and the defendants, Robson's liability insurance, which should have been used to obtain a joint release from Okumura in favor of both Robson and McLaughlins or to pay Okumura's claims down for the benefit of both Robson and the McLaughlins, was spent only obtaining a release of Robson from the Okumura claims.

The McLaughlins subsequently filed an action against Robson for malpractice and fraud and obtained a judgment against Robson in the amount of $3,571,429.33 on October 2, 2001, in case number 4FA–96–2602 Civil. To collect on this judgment, the McLaughlins executed on all claims that Robson had against the current defendants, which claims are alleged by the McLaughlins to have been "assigned" to them by court order. Pursuant to AS 09.17.080, plaintiffs allege that Robson had claims for allocation that could have been asserted against defendants following the entry of judgment in 4FA–96–2602 Civil and that defendants are liable for their percentage of fault in causing the harm.

The McLaughlins sued in September of 2003, claiming that Hughes Thorsness was liable to them as Robson's assignees for some portion of their judgment against Robson in proportion to Hughes Thorsness's responsibility for Robson's conduct. Hughes Thorsness promptly filed three separate motions to dismiss claiming that (1) assignments of legal malpractice claims are not permitted, (2) the applicable statute of limitations had expired, and (3) a defendant such as Robson cannot seek to require others to share fault and liability except in the initial action in which he is sued. Ruling only on the last ground, the superior court ordered the complaint dismissed.

The superior court reasoned that the McLaughlins' case "is effectively one for contribution and because contribution actions were repealed by the 1989 voter initiative establishing proportionate fault, Alaska Rule of Civil Procedure 12(b)(6) bars the instant action." The court determined that the relevant fault allocation statute, AS 09.17.080 (1989), "does not create a separate cause of action in which a defendant can obtain an affirmative recovery...." "All that [AS 09.17.080 (1989)] allows a defendant to do is join other persons who may be liable to a claimant, and to have a factual determination made of the percentages of fault for each responsible person." Consequently, the court held that the McLaughlins as assignees of Robson could not initiate a post-judgment action against Hughes Thorsness.

## II. STANDARD OF REVIEW

■ Decisions granting motions to dismiss for failure to state a claim upon which relief can be granted are reviewed de novo and the allegations contained in the complaint are

accepted as true for purposes of review.[2] Such decisions will be affirmed only if it appears that the claimants "can prove no set of facts which would entitle them to relief." [3]

## III. RELEVANT STATUTES

Because the alleged tortious conduct in this case occurred between 1993 and 1995, the 1989 tort reform initiative in effect from 1989 to 1997 governs this case.[4] This initiative enacted a comparative fault-several liability system and repealed Alaska's version of the Uniform Contribution Among Joint Tortfeasors Act (Uniform Contribution Act). As modified by the 1989 initiative, AS 09.17.080 provided:

(a) In all actions involving fault of more than one party to the action, including third-party defendants and persons who have been released under AS 09.16.040, the court, unless otherwise agreed by all parties, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings, indicating (1) the amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and (2) the percentage of the total fault of all of the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under AS 09.16.040.

(b) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault, and the extent of the causal relation between the conduct and the damages claimed. The trier of fact may determine that two or more persons are to be treated as a single party if their conduct was a cause of the damages claimed and the separate act or omission of each person cannot be distinguished.

(c) The court shall determine the award of damages to each claimant in accordance with the findings, subject to a reduction under AS 09.16.040, and enter judgment against each party liable. The court also shall determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault.

(d) The court shall enter judgment against each party liable on the basis of several liability in accordance with that party's percentage of fault.

Under the initiative, AS 09.17.900 defined "fault" as follows:

In this chapter "fault" includes acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability. The term also includes breach of warranty, unreasonable assumption of risk not constituting an enforceable express consent, misuse of a product for which the defendant otherwise would be liable, and unreasonable failure to avoid an injury or to mitigate damages. Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault.[5]

Under Alaska's version of the Uniform Contribution Act, repealed by the 1989 initiative, a tortfeasor that paid more than its "pro rata" share of the common liability had a right of contribution against other tortfeasors. Each tortfeasor was liable for contribution "pro rata," that is per capita. The act provided that in determining a defendant's share of damages "relative degrees of fault shall not be considered." [6]

---

**2.** *Valdez Fisheries Dev. Ass'n, Inc. v. Alyeska Pipeline Serv. Co.,* 45 P.3d 657, 664 (Alaska 2002).

**3.** *Id.*

**4.** We refer to the initiative as the 1989 initiative because it became effective in 1989, although it was passed in 1988. Initiative 87TOR2, Relating to Civil Liability, was passed on November 8, 1988. It remained in effect until 1997 when the legislature substantially amended AS 09.17.080. Our holding in this case is limited to cases controlled by the 1989 initiative; we intimate no

view as to its application to the post–1997 system.

**5.** This definition was amended in 1997, when the words "or intentional" were inserted after "reckless." Ch. 26, § 15, SLA 1997.

**6.** Former AS 09.16.020(1). These features were codified in Former AS 09.16.010(a) & (b) and Former AS 09.16.020(1). Former AS 09.16.010(a) & (b) provided:

(a) Except as otherwise provided in this chapter, where two or more persons become

## IV. ARGUMENTS ON APPEAL

The McLaughlins argue that the precedents of this court indicate that a defendant may bring suit against a third party to allocate fault and liability after a judgment is entered against it. They note that such a result was allowed in *Borg–Warner Corp. v. Avco Corp.*,[7] and argue that even though *Borg–Warner* was decided under an earlier, and significantly different, version of AS 09.17.080,[8] essentially the same result was endorsed in *Universal Motors, Inc. v. Neary*,[9] a case arising under the 1989 initiative. They also contend that our decision in *Alaska General Alarm, Inc. v. Grinnell*[10] indicates that while a defendant has the option of impleading third-party defendants in the original action, a defendant is not required to do so and may instead bring a separate action.[11]

Hughes Thorsness's position is that Robson, as the defendant in the McLaughlins' case against him for malpractice and fraud, had an obligation to file a third-party action in that case against Hughes Thorsness or be barred from subsequently suing Hughes Thorsness. "Robson's decision not to bring Hughes Thorsness into McLaughlins' initial action for fault allocation purposes, before final judgment, extinguishes any fault allocation rights." Hughes Thorsness also argues

that *Borg–Warner* is inapplicable because the claim asserted by *Borg–Warner* was one for contribution, as is the McLaughlins' claim, and contribution has been abolished. Hughes Thorsness distinguishes *Neary*, arguing that while that case allowed a *plaintiff* to bring a second action against defendants not named in the first action, that "does not mean a *defendant* can bring a separate, second action . . . ." Hughes Thorsness also argues that there are reasons of judicial economy for requiring fault allocation to take place in only one action.[12]

## V. DISCUSSION

### A. Summary

■ We conclude, for the reasons that follow, that the 1989 initiative does not bar a defendant's post-judgment separate action against a third party that seeks to allocate a share of the defendant's fault and liability to the third party. Our decision in *Neary* permitting post-judgment separate actions by plaintiffs largely governs this point. The *Neary* rationale cannot fairly be limited to establishing a right that runs to plaintiffs, but not defendants. We agree with Hughes Thorsness's argument that a separate action brought by a defendant against a third party is, in essence, a claim for contribution. We

jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them, even though judgment has not been recovered against all or any of them.
(b) The right of contribution exists only in favor of a tortfeasor who has paid more than that tortfeasor's pro rata share of the common liability, and the total recovery of that tortfeasor is limited to the amount paid in excess of the pro rata share. No tortfeasor is compelled to make contribution beyond the tortfeasor's pro rata share of the entire liability.
Former AS 09.16.020(1) provided: "In determining pro-rata shares of tortfeasors in the entire liability (1) their relative degrees of fault shall not be considered[.]"

7. 850 P.2d 628 (Alaska 1993).

8. Before the 1989 initiative became effective, subsection .080(d) provided for modified joint and several liability. A party allocated less than fifty percent of the total fault was liable for no more than twice the total fault allocated to that party. The initiative changed subsection (d) by mandating several liability according to a party's

percentage of fault. Subsections (a)-(c) of .080 were not changed, except for changes in statutory citations necessitated by a recodification.

9. 984 P.2d 515 (Alaska 1999).

10. 1 P.3d 98 (Alaska 2000).

11. The McLaughlins also argue that this suit is not barred by the statute of limitations or by a rule prohibiting the assignability of legal malpractice claims. They also contend that the award of fees and costs in this case were excessive. We do not reach these claims for reasons explained below. *See infra* page 280.

12. Hughes Thorsness also argues that the underlying torts for which allocation is sought, "fraud" and "conspiracy," are intentional torts for which there can be no fault allocation. We briefly address this claim below at page 280. Hughes Thorsness additionally asserts that for policy reasons Robson's claim should not be assignable. We do not reach this claim for reasons asserted on page 280 *infra*.

do not agree, however, that all contribution claims were prohibited by the 1989 initiative. The initiative repealed Alaska's Uniform Contribution Act. This was necessary because the Uniform Contribution Act's system of per capita loss sharing among defendants was inconsistent with the comparative fault-several liability system established by the 1989 initiative. But the repeal merely meant that Alaska no longer had a statutory contribution system. It did not mean that common law contribution that is consistent with comparative fault and several liability would be unavailable. The need for a contribution remedy has been greatly reduced by Civil Rule 14(c), which allows defendants to bring third-party claims for equitable apportionment in the original tort case. By using this procedure a defendant can avoid liability for a disproportionate share of the plaintiff's damages by ensuring that the relative fault of all responsible actors is determined by the jury. But sometimes it is not expedient or even possible to implead third-party defendants. In such cases, an action for common law contribution can serve to fairly apportion damages according to the relative fault of all responsible persons and thus further the underlying objective of a comparative fault-several liability system. We conclude that common law contribution is an appropriate available remedy that is consistent with the 1989 initiative. We remand this case for further proceedings in order to determine whether a common law contribution claim can be maintained under the facts and circumstances of this case.

**B. AS 09.17.080 Does Not Require That All Claims of Either Plaintiffs or Defendants Be Litigated in a Single Case.**

With the advent of comparative fault and several liability some courts have held that all claims must be tried in one action.[13] But this court has declined to adopt this rule. In *Neary* the appellant advocated the adoption of the so-called "one-action" rule that was developed by the Supreme Court of Kansas and had been adopted by some other jurisdictions. In *Neary* the plaintiff was struck by a vehicle driven by a young motorist who was both unlicensed and uninsured. The plaintiff sued the motorist's parents for negligent entrustment. This suit was dismissed on summary judgment. Then the plaintiff filed a separate suit against Universal Motors, claiming that Universal had negligently sold the vehicle involved in the accident to the unlicensed motorist. Universal moved to dismiss, claiming that Alaska should adopt a "one-action" rule under which the fault of all potentially responsible parties must be tried in a single case.[14]

We held, in language that is broad enough to apply to separate actions brought by defendants as well as plaintiffs, that "AS 09.17.080 does not mandate a single action for each injury or accident."[15] Our primary rationale was that the model act on which AS 09.17.080 is based contemplated the possibility of subsequent litigation against other potential tortfeasors.[16] This rationale was also expressed in terms applicable to separate actions brought either by plaintiffs or defendants:

> Subsection (a) of the statute derives from Section 2(a) of the Uniform Comparative Fault Act of 1977. *The comment pertaining to the latter indicates that the drafters of the Uniform Act contemplated the possibility of subsequent suits against other potential tortfeasors:*
>
> > The limitation to parties to the action means ignoring other persons who may have been at fault with regard to the particular injury but who have not been joined as parties. This is a deliberate decision. It cannot be told with certainty whether that person was actually at fault or what amount of fault should be attributed to him, or whether he will ever be sued, or whether the statute of

13. *See generally* David Polin, Annotation, *Comparative Negligence: Judgment Allocating Fault in Action Against Less Than all Potential Defendants as Precluding Subsequent Action Against Parties not Sued in Original Action*, 4 A.L.R. 5th 753, 1992 WL 767547 (1992).

14. *Neary,* 984 P.2d at 516.

15. *Id.*

16. *Id.* at 517.

limitations will run on him, etc. An attempt to settle these matters in a suit to which he is not a party would not be binding on him.

In construing statutes taken from model acts we generally regard the commentary to the model act as a reliable guide to the statute's meaning. We so regard the commentary quoted above and *conclude that our statute was not intended to preclude separate actions against different tortfeasors.*[17]

The leading case propounding the one-action rule is *Albertson v. Volkswagenwerk Aktiengesellschaft.*[18] The court outlined the rule in terms highlighting one of its drawbacks: "Under the doctrine of comparative fault all parties to an occurrence must have their fault determined in one action, even though some parties cannot be formally joined or held legally responsible. Those not joined as parties or for determination of fault escape liability."[19] *Albertson* involved a second action brought by a plaintiff, but the one-action rule has also been applied to separate actions brought by defendants.[20]

In *Benner v. Wichman* we held that fault should be assessed in an action under AS 09.17.080 only against "parties to an action, including third-party defendants and settling parties" and not against other persons who might be responsible for the accident.[21] By contrast, in Kansas the fault of all potentially responsible persons—sometimes referred to in Kansas cases as "phantom" parties—is assessed.[22] This feature is an important reason for the one-action rule. By assessing the fault of absent responsible persons as well as the parties to the action, the jury has assessed all the fault of all the actors responsible for the accident. "The proportionate fault attributable to 'phantom' parties reduces the amount of damages attributable to the defendants in an action, in a sense indemnifying those defendants for the damages caused by the phantoms. The statute assures that each defendant will bear only his proportionate share of the loss."[23] In Alaska there is no reduction attributable to the fault of non-parties.[24] In cases where non-parties may be at fault, it cannot be said that each defendant will bear only his proportionate share of the loss. Thus, this reason for applying the one-action rule does not apply to Alaska.

An A.L.R. annotation has noted the importance of this distinction.[25] Referring to jurisdictions that attribute fault to "phantom" parties the annotation states:

Courts that have expressed the view that all fault is allocated in one action under the doctrine of comparative negligence have held that prior explicit or implicit determinations of fault in comparative negligence proceedings served to preclude later actions arising from the

**17.** *Id.* at 516–17 (citations omitted) (emphasis added).

**18.** 230 Kan. 368, 634 P.2d 1127 (Kan.1981).

**19.** *Id.* at 1132.

**20.** *E.g., St. Francis Reg'l Med. Ctr., Inc. v. Critical Care, Inc.,* 997 F.Supp. 1413 (D.Kan.1997) (recognizing applicability of Kansas's one-action rule to settling defendant's attempt to sue third party to recoup settlement); *Teepak, Inc. v. Learned,* 237 Kan. 320, 699 P.2d 35 (1985) (when a defendant participates in a settlement which operates as a full release of any and all claims the plaintiff may have had, the defendant may not compel successive tortfeasors against whom the plaintiff filed no claims to contribute to the settlement); *Travelers Ins. Cos. v. Jackson Commc'ns Corp.,* 573 F.Supp. 1139 (D.Kan.1983) (applying Kansas law to prevent defendant insurer that settled claim from seeking indemnification from third party not sued by plaintiff); *Ellis v. Union Pac. R.R. Co.,* 231 Kan. 182, 643 P.2d

158 (1982) (defendant in a comparative negligence action cannot settle a claim on behalf of a party and then seek contribution from that party in proportion to the percentage of causal negligence attributable to that party); *Eurich v. Alkire,* 224 Kan. 236, 579 P.2d 1207 (1978) (defendant who failed to make a claim against his co-defendant or against plaintiff was thereafter barred from asserting claim against co-defendant in subsequent action).

**21.** 874 P.2d 949, 958 (Alaska 1994).

**22.** *See, e.g., Baird v. Phillips Petroleum Co.,* 535 F.Supp. 1371, 1378 (D.Kan.1982); *Brown v. Keill,* 224 Kan. 195, 580 P.2d 867, 876 (1978).

**23.** *Travelers Ins.,* 573 F.Supp. at 1141.

**24.** *Benner,* 874 P.2d at 958.

**25.** *Polin, supra* note 13.

same incidents against defendants not named in the prior proceedings.... [26]

By contrast, as to jurisdictions such as Alaska, the annotation states:

> In jurisdictions in which the one-action rule has not been applied, some courts have held that prior determinations of fault in comparative negligence proceedings did not serve to preclude later actions arising from the same incidents against defendants not named in the prior proceedings.... The courts emphasized that the comparative fault with respect to the non-named defendants had never been determined in the prior proceedings.[27]

Hughes Thorsness's argument that reasons of judicial economy should preclude defendants from bringing separate actions is not substantially different from the argument that was made and rejected in *Neary*. *Neary's* rationale concerning the judicial economy argument also applies here:

> From a judicial economy standpoint, it is generally true that one trial is preferable to multiple trials. But existing parties already possess a strong incentive to name all potential tortfeasors. As we observed in *Benner*:
>
> > Both plaintiff and defendants will have significant incentive for joining available defendants who may be liable. The more parties joined whose fault contrib-

uted to the injury, the smaller the percentage of fault allocated to each of the other parties, whether plaintiff or defendant.

Further, one drawback of the one-action rule is that it may result in the needless joinder of parties whose fault is remote. Whether the benefit from the additional incentive for joining all potentially liable actors supplied by the one-action rule is outweighed by the detriment resulting from the complications of multi-party litigation is a policy question best left to the legislature.[28]

Our observation in *Neary* that there are drawbacks to a one-action rule bears further comment. Adding numerous parties to a lawsuit obviously has a strong potential to delay litigation and make it more expensive. Relatedly, the liability issues in the case against an unjoined defendant may be completely different from those in the original action. In addition, the fault of a responsible entity may not be discovered, or understood, in time to join it as a defendant, or a third-party defendant, in the original action.[29] Moreover, some third-party claims are, practically speaking, inconsistent with a party's position in the original action and may serve to undermine it. Other third-party claims may needlessly and unfairly stress a valuable relationship.[30]

---

26. *Id.* at 759.

27. *Id.* at 760.

28. *Neary*, 984 P.2d at 517 (footnotes omitted).

29. A case demonstrating these drawbacks is discussed in *Olds v. Donnelly*, 150 N.J. 424, 696 A.2d 633, 657–58 (1997) (Stein, J., concurring) (discussing *Rapuano v. Altongy*, No. A–003854–95T2 (N.J. Sup.Ct.App. Div., April 18, 1997), *cert. denied*, 697 A.2d 549 (N.J.1997)). The plaintiff in *Rapuano* was injured and required surgery as a result of a motor vehicle collision. He sued both drivers. Sixty days before the suit was settled he received a report indicating that malpractice was committed in the surgery. He brought a separate suit against the surgeon, but this was dismissed based on New Jersey's version of the one-action rule, called the "entire controversy doctrine." Noting that "equitable consideration suggests that the sixty-day window between receipt of the expert's report and the settlement of the automobile accident litigation is too short a time to justify the extreme remedy of dismissal of

the malpractice claim for failure to join it in the original action" and the "entirely distinct" nature of the liability issues, the concurring justice cited this case as one example in support of his conclusion that the judicial adoption of the one-action rule had been a mistake.

30. The "continuous representation" rule applied to statutes of limitations in some jurisdictions reflects the desirability of deferring litigation against a potentially responsible party where there is an ongoing relationship. *See Wettanen v. Cowper*, 749 P.2d 362, 365 & n. 1 (Alaska 1988); *Beesley v. Van Doren*, 873 P.2d 1280, 1283 n. 4 (Alaska 1994). The court in *Olds v. Donnelly* decided that New Jersey's version of the one-action rule should not be applied to lawyer malpractice cases. In reaching this conclusion the court relied on some reasons that are unique to the lawyer/client relationship, such as jeopardizing lawyer/client confidences. But the court also relied on reasons that are strategic and common to many ongoing relationships between defendants and potential third-party defendants:

Hughes Thorsness also argues that if defendants are allowed to bring separate actions the third-party defendant "would be entitled to bring in all responsible parties," including the original plaintiff, and that collateral estoppel would not prevent the third-party defendant from relitigating any issue. Hughes Thorsness is not correct that other defendants or the plaintiff in the original action would need to become parties in the second action.[31] Prior judgments and settlements would not be disturbed by the second action.[32]

But Hughes Thorsness is correct that third-party defendants will not ordinarily be barred from relitigating prior fault allocations or damages. While such relitigation will not affect the finality of the prior judgment or settlements, it may influence what the third-party defendant is required to pay. The third-party defendant's objective in relitigating fault would be to show it was either not responsible at all or only responsible for a relatively low percentage of the total fault that contributed to the loss. A reassessment of the fault of the other responsible parties is relevant to this determination. The third-party defendant can also minimize its damages by attempting to prove that the plaintiff's damages are lower than the amount assessed in the first suit.

Hughes Thorsness's observation that the third-party defendant will be arguing against "empty chairs" in attempting to minimize its responsibility by ascribing fault to absent prior parties is also correct. But this is not a disadvantage to the third-party defendant.

> Because the first attorney is now a potential witness, that attorney's own interests are no longer aligned with those of the client. Although we do not suggest that potentially negligent attorneys would misrepresent facts, an attorney charged with malpractice, like any other litigant, would have an incentive to testify guardedly when sued by a former client. Thus, clients are put in the untenable position of either pursuing a claim against their attorney, whose negligence may never result in an unfavorable outcome, or forever foregoing a legal-malpractice action. Clients who are satisfied with their attorneys and want to maintain an otherwise satisfactory relationship may for[e]go the right to sue. That result does not provide the fairness that the entire controversy doctrine is designed to encourage.
> 696 A.2d at 642.

Allocating fault to absent parties is an easier task than allocating fault to parties who are present and defending their conduct. The "empty chair" burden thus falls on the defendant who initiates the separate action. This is not generally unfair because this burden is the product of the defendant's choice not to join the third-party defendant in the original action.

In sum, the 1989 initiative does not require that the fault of all parties be tried in a single case. We so held in *Neary*. The reasons supporting that conclusion—legislative intent, the complexity, expense, and delay of multi-party litigation, and the fact that the second litigation will not involuntarily involve others who have settled or whose claims or defenses have been adjudicated—apply to separate claims brought by defendants as well as plaintiffs.

### C. Common Law Contribution Is Available.

The superior court held that the McLaughlins' action as the assignees of claims held by Robson against Hughes Thorsness was "effectively one for contribution and because contribution actions were repealed by the 1989 voter initiative establishing proportionate fault ..." the action could not be maintained. We agree that the action can fairly be described as seeking contribution. Robson's assignees seek to allocate a share of Robson's fault to Hughes Thorsness which is alleged to have acted concurrently with Robson in causing harm to the McLaughlins.

---

**31.** Hughes Thorsness appears to concede as much in a footnote in its brief: "Because the judgment between the original plaintiff and defendant could not be altered by case two, it would seem likely that plaintiff would not bother to contest case two, leaving the original defendants to assert the plaintiff's claim, and the new defendant to argue the 'empty chair.'"

**32.** *See, e.g., Neary*, 984 P.2d at 518 (inconsistent results will not result from failure to adopt one-action rule); *Durden v. Hydro Flame Corp.*, 295 Mont. 318, 983 P.2d 943, 949 (1999) (settlement by tortfeasor precludes claims for contribution against it); *see also* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIAB. § 23(a) (2000) (prior settlement by defendant a bar to liability for contribution in subsequent action).

The assignees claim that Robson has been held one hundred percent at fault for their loss, whereas another tortfeasor, Hughes Thorsness, was also responsible and should reimburse Robson. Although this remedy could be given any number of names,[33] it is effectively contribution.

We do not agree, however, that the 1989 initiative was intended to bar common law contribution. As already noted, the initiative repealed Alaska's version of the Uniform Contribution Act. This repeal was necessary because the act called for contribution on a per capita rather than a fault-proportional basis. The Uniform Contribution Act was therefore inconsistent with the comparative fault-several liability system of the 1989 initiative.

The injustice of retaining the per capita contribution system is readily illustrated by reference to the facts of *Ehredt v. DeHavilland Aircraft Co. of Canada, Ltd.*[34] In *Ehredt* the jury found that the plaintiff was ten percent at fault, defendant Ehredt fifteen percent at fault, and defendant DeHavilland seventy-five percent at fault.[35] DeHavilland paid the plaintiff roughly $2 million for the release of the whole amount of the defendants' joint and several liability and then sought half of that sum from Ehredt in a claim for contribution.[36] We held, based on the per capita measure mandated in the Uniform Contribution Act, that DeHavilland was entitled to a full fifty percent of the sum it paid even though Ehredt was only fifteen percent responsible.[37] Under a proportional fault contribution system Ehredt would have been liable for only about $333,333 (the product of 15/90 × 2,000,000) rather than the

$1,000,000 it had to pay using the Uniform Contribution Act's pro-rata measure. This example, from a case that was decided not long before the initiative was proposed, illustrates how the pro-rata measure of contribution liability contained in the Uniform Contribution Act would have undermined the comparative fault-several liability system enacted by the 1989 initiative.

■ But the repeal of the Uniform Contribution Act meant only that Alaska's pro-rata statutory contribution system was no longer in effect. The repeal does not imply rejection of the principle of contribution based on proportional fault. We recognized this in *Alaska General Alarm, Inc. v. Grinnell.*[38] We held there that a tort defendant's third-party claim for equitable apportionment under Civil Rule 14(c), filed after the statute of limitations governing the original action had expired, was not time-barred.[39] We recognized that such claims were similar to contribution actions: "At its root" each "claim is a mechanism for spreading damage."[40] To illustrate this similarity we observed that the draft Restatement (Third) of Torts preserved contribution as a remedy under systems like Alaska's in cases where fewer than all those responsible had been joined:

> Indeed, the draft Restatement (Third) of Torts recognizes that even under apportioned liability a defendant sued in an action in which fewer than all the relevant persons have been joined might be liable for more than its percentage of fault and thus might be entitled to "contribution." *See* Proposed Final Draft, RESTATEMENT (THIRD) OF TORTS § 33 cmt. f (1999).[41]

---

**33.** In California it is called "partial indemnity." *See American Motorcycle Ass'n v. Superior Court,* 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (1978). As the Restatement notes, this is effectively a contribution remedy. *See* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIAB. § 23, reporter's note to cmt. (a) (2000). *See also* 18 Am.Jur.2d Contribution § 2 (2004) (noting that California uses the term "comparative indemnity" to refer to what most jurisdictions call contribution). Wyoming refers to the same remedy as "comparative indemnity for equitable implied indemnity actions." *Schneider Nat'l, Inc. v. Holland Hitch Co.,* 843 P.2d 561, 580 (Wyo.1992).

**34.** 705 P.2d 913, 917 (Alaska 1985).

**35.** *Id.* at 917 n. 9.

**36.** *Id.* at 915.

**37.** *Id.* at 917.

**38.** 1 P.3d 98 (Alaska 2000).

**39.** *Id.* at 101–02.

**40.** *Id.* at 105.

**41.** *Id.* at 105 n. 40. Section 33 of the Proposed Final Draft is now § 23 of the Restatement.

We concluded that a defendant's equitable apportionment claim, like contribution, did not accrue when the underlying tort was committed, but upon settlement or judgment concerning the underlying claim.[42] This was true even though the equitable apportionment claim could be joined for litigation with the underlying claim before it technically accrued.[43] One complication was that with the repeal of the Uniform Contribution Act the separate contribution statute of limitations was also repealed. But we held that this repeal did not imply a rejection of third-party procedures "well established in this state and the common law." [44] "The scant legislative history demonstrates that the initiative's supporters were concerned almost exclusively with ensuring that defendants would be liable only for their share of fault." [45]

Most other states have contribution systems. In many states contribution is statutory. But in a substantial number of states contribution has been developed as a matter of common law.[46]

One of the leading cases is *American Motorcycle Ass'n v. Superior Court of Los Angeles County*.[47] *American Motorcycle* was decided three years after California by judicial decision abolished the all-or-nothing rule of contributory negligence in favor of a comparative negligence system.[48] In *American Motorcycle* the court adopted a rule of comparative contribution, termed partial equitable indemnity, "under which liability among multiple tortfeasors may be apportioned on a comparative negligence basis." [49] This rule was found necessary in order to further the objective of the newly adopted comparative negligence system "under which liability for damage will be borne by those whose negli-

---

**42.** *Id.* at 105.

**43.** *Id.*

**44.** *Id.*

**45.** *Id.* at 106. In *Grinnell* we also observed that "it appears that voters repealed these provisions [the Uniform Contribution Act including the contribution statute of limitations] as superfluous—because a pure comparative fault regime rendered it theoretically unnecessary for defendants to seek post-judgment reimbursement, particularly given existing civil rules that generally permit liberal joinder of parties." *Id.* This observation did not take into account that the per capita basis for contribution liability under the Uniform Contribution Act was inconsistent with the comparative fault-several liability system of the 1989 initiative. The observation was dictum and does not appear to be supported by the initiative history set out in *Grinnell*. In any case, the *Grinnell* court did not conclude that the "superfluous" rationale meant that post-judgment actions were barred. Rather, in contemplation of such actions, the court stated that what statute of limitations would apply to such actions remained an open question:

> In the present case, *Grinnell* filed its third-party complaint for apportionment of damages prior to judgment. Because third-party actions of this kind are traditionally deemed to accrue upon judgment or settlement our conclusion that Grinnell's action is distinct from McIntire's underlying action in tort *makes it unnecessary to decide what period of limitation might apply to an apportionment action filed after judgment or settlement.*

*Id.* (emphasis added).

**46.** *See George's Radio, Inc. v. Capital Transit Co.*, 126 F.2d 219 (D.C.Cir.1942); *American Motorcycle Ass'n v. Superior Court of Los Angeles County*, 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (1978); *Skinner v. Reed–Prentice Div. Package Mach. Co.*, 70 Ill.2d 1, 15 Ill.Dec. 829, 374 N.E.2d 437 (1977); *Best v. Yerkes*, 247 Iowa 800, 77 N.W.2d 23 (Iowa 1956); *Quatray v. Wicker*, 178 La. 289, 151 So. 208 (1933); *Roberts v. American Chain & Cable Co.*, 259 A.2d 43 (Me. 1969); *Underwriters at Lloyds v. Smith*, 166 Minn. 388, 208 N.W. 13 (1926); *Safeway Stores, Inc. v. City of Raytown*, 633 S.W.2d 727 (Mo. 1982); *Royal Indemnity Co. v. Aetna Cas. & Sur. Co.*, 193 Neb. 752, 229 N.W.2d 183 (1975); *Dole v. Dow Chem. Co.*, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972); *Goldman v. Mitchell–Fletcher Co.*, 292 Pa. 354, 141 A. 231 (1928); *Davis v. Broad St. Garage*, 191 Tenn. 320, 232 S.W.2d 355 (1950); *Sitzes v. Anchor Motor Freight, Inc.*, 169 W.Va. 698, 289 S.E.2d 679 (1982); *Bielski v. Schulze*, 16 Wis.2d 1, 114 N.W.2d 105 (1962); *Schneider Nat'l, Inc. v. Holland Hitch Co.*, 843 P.2d 561 (Wyo.1992).

Some of these decisions were later legislatively codified. *E.g.*, Illinois Joint Tortfeasor Contribution Act, 740 Ill. Comp. Stat. 100/0.01 to 100/5; Uniform Contribution Among Tort-feasors Act, 42 Pa. Cons.Stat. §§ 8321–8327; Uniform Contribution Among Tort-feasors Act, Tenn.Code Ann. §§ 29–11–101 to 29–11–106.

**47.** 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (1978).

**48.** *Li v. Yellow Cab Co.*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975).

**49.** 146 Cal.Rptr. 182, 578 P.2d at 902.

gence caused it in direct proportion to their respective fault." [50] The court further observed that its holding represented "an evolutionary development of the common law" equitable indemnity doctrine that furthered "an equitable distribution of loss among multiple tortfeasors." [51]

*American Motorcycle* adopted a contribution remedy even though California had an existing contribution statute. The statute was applicable only to joint judgment debtors and, like Alaska's repealed statute, called for contribution per capita rather than proportional to fault.[52] The *American Motorcycle* court observed that the contribution statute merely represented an effort to lessen the harshness of the early common law rule that prohibited contribution.[53] The statute was not intended "to preempt the field or to foreclose future judicial developments which further the act's principal purpose of ameliorating the harshness and inequity of the old no contribution rule." [54]

The courts of New York and Missouri have also adopted common law contribution under similar circumstances as in California, even though those states also had contribution statutes which provided for a limited contribution remedy.[55] Contribution in these states, as in most other states, may be asserted in the original tort action or in a separate action.[56]

Common law contribution is also permitted by the Restatement of Torts.[57] The current Restatement makes it clear that contribution has a viable role in several liability jurisdic-tions where the contribution defendant's responsibility was not considered in the original action.[58] Comment f to section 23 of the current Restatement [59] states:

> If a person is otherwise entitled to recover contribution, contribution is limited to the amount that person pays to the plaintiff above that person's percentage of responsibility. In a jurisdiction where a defendant is only severally liable ..., a defendant normally would pay no more than its own percentage share and would not be entitled to contribution. Even in a jurisdiction that does not use joint and several liability, however, a severally liable defendant might be sued with less than all of the relevant persons and be liable for more than its own percentages of responsibility, and therefore be entitled to contribution. See Comment c and Illustration 4.

Comment c states in part: "Normally, liability for the same indivisible injury will result from joint and several liability ... but a severally liable person might sometimes be liable for the same indivisible injury caused by another severally liable person. Such a person may be entitled to contribution." Illustration 4 following this comment gives the following example pertaining to contribution in a severally liable jurisdiction:

> A is injured jointly by B, C, and D and sues B and C. In a jurisdiction that has rejected joint and several liability, B and C are each held severally liable for A's damages without any consideration of D's responsibility. B and C have been held lia-

---

**50.** *Id.* (quoting *Li,* 119 Cal.Rptr. 858, 532 P.2d at 1232).

**51.** *Id.*

**52.** *Id.* at 913, 119 Cal.Rptr. 858, 532 P.2d 1226.

**53.** *Id.* at 908, 119 Cal.Rptr. 858, 532 P.2d 1226.

**54.** *Id.* at 914, 119 Cal.Rptr. 858, 532 P.2d 1226.

**55.** *Safeway Stores, Inc. v. City of Raytown,* 633 S.W.2d 727 (Mo.1982); *Dole,* 331 N.Y.S.2d 382, 282 N.E.2d at 288.

**56.** *Gem Developers v. Hallcraft Homes of San Diego, Inc.,* 213 Cal.App.3d 419, 261 Cal.Rptr. 626, 631 (1989) ("As part of the comparative equitable indemnity doctrine, a defendant who is

sued has a right to bring in other tortfeasors who are allegedly responsible for plaintiff's action through a cross-complaint or by a separate complaint for equitable indemnification."); *Safeway Stores,* 633 S.W.2d at 731–32 & n. 6; *Schneider,* 843 P.2d at 579 (additional proceedings permitted).

**57.** *See* RESTATEMENT (SECOND) OF TORTS § 886A (1977), supplanted by RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIAB. § 23 (2000).

**58.** RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIAB. § 23, comment f, c & illustration 4 (2000).

**59.** This is the comment referred to by this court in *Grinnell,* 1 P.3d at 105 n. 40, as part of what was then the proposed final draft to the since-renumbered section 33.

ble for the same indivisible harm caused by D and may be entitled to contribution from D.

▮ In our view contribution should be available as a common law remedy because it furthers the goal of apportioning of tort losses in accordance with each responsible person's percentage of fault. Adopting this remedy for Alaska is a logical concomitant of two aspects of our law. The first is the holding of *Benner v. Wichman.*[60] Since the fault of non-parties is not assessed in the original trial, some defendants may be made to bear more than what their share of fault would be if the responsibility of all those at fault were considered. The second is the rule of *Universal Motors, Inc. v. Neary.*[61] Our rejection of a one-action rule leaves little reason to insist that defendants seeking to spread their damages must bring their claims under Civil Rule 14(c) rather than independently.[62]

### D. Issues on Remand

▮ Although we have decided that common law contribution is available in appropriate cases, it is not clear that this is a case to which the remedy applies. The McLaughlins did not style their complaint explicitly as stating a claim for contribution. But they did allege that "Robson had claims for allocation" and cited in their complaint as a part of this allegation *Borg–Warner v. Avco Corp.*[63] The claim in *Borg–Warner* was a contribution claim. This allegation plus the citation of the case gave Hughes Thorsness fair notice of the nature of their claim. Common law contribution requires a discharge of the liability of the contribution defendant and payment by the contribution plaintiff in excess of the contribution plaintiff's comparative share of responsibility.[64] The complaint does not allege either discharge or payment by Robson. But we must ask under the standard by which motions to dismiss are reviewed whether the McLaughlins "can prove no set of facts which would entitle them to" maintain a contribution claim.[65] On the record before us we cannot give an affirmative answer to this question. It is conceivable that the McLaughlins have successfully executed on Robson's personal assets. Further, whether the discharge requirement may be met by the running of a statute of limitations may be an open question.[66]

Hughes Thorsness also argues that contribution cannot be available in this case because there can be no fault allocation between intentional tortfeasors. Given that under the initiative "fault" is defined in terms of negligent or reckless conduct with-

60. *See supra* page 273–74. *Benner* held that fault should be assessed only against parties (including third-party defendants and settling parties), not other persons who might be responsible. We also observed in *Benner* that "the [1989] initiative did away with one category of claims—contribution." 874 P.2d at 956. This was a reference to the statutory per capita contribution system that was repealed by the initiative, not to common law contribution.

61. *See supra* pages 272–73, 274–75.

62. Under the federal rules on which our Civil Rules 14(a) and (b) are based impleader is always permissive and not compulsory. As Moore states: "The impleader rule provides that a defending party *may* implead, not that it *shall* or *must*" and "if a defending party fails to use impleader ... that defending party remains free to sue the third-party separately to assert a right of indemnity or contribution." 3 JAMES WM. MOORE ET AL, MOORE'S FEDERAL PRACTICE 14.03[3] (3d ed.1997) (emphasis in original). Although Civil Rule 14(c) is unique to Alaska it is, by its terms, permissive and it bears no indication that claims coming within its purview, unlike other claims covered by Civil Rule 14, are to be regarded as compulsory.

63. 850 P.2d 628 (Alaska 1993).

64. *See* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIAB. § 23(a) and (b) (2000):

(a) When two or more persons are or may be liable for the same harm and one of them discharges the liability of another by settlement or discharge of judgment, the person discharging the liability is entitled to recover contribution from the other, unless the other previously had a valid settlement and release from the plaintiff.

(b) A person entitled to recover contribution may recover no more than the amount paid to the plaintiff in excess of the person's comparative share of responsibility.

65. *Valdez Fisheries Dev. Ass'n, Inc. v. Alyeska Pipeline Serv. Co.*, 45 P.3d 657, 664 (Alaska 2002).

66. *See Criterion Ins. Co. v. Laitala*, 658 P.2d 112, 118 (Alaska 1983) (Rabinowitz, J., concurring).

out mentioning intentionality, there may be merit to this argument.[67] On the other hand, we have indicated that an expansive interpretation of "intentional" is inconsistent with the comparative negligence principles contained in AS 09.17.080.[68] In *Borg–Warner* we stated that AS 09.17.900 "clearly contemplates a relative allocation of fault between all unintentional tortfeasors, whether negligent, grossly negligent or willful and wanton" and excluded only tortfeasors "who act with the specific intent to cause the resultant harm."[69] Reviewing the complaint in light of the applicable standard of review for motions to dismiss, we cannot say that the conduct complained of on the part of Robson and Hughes Thorsness necessarily meets the narrow standard of intentionality that goes beyond comparability under AS 09.17.900.

The parties also seek rulings on the motions to dismiss that the superior court did not decide relating to the assignability of legal malpractice claims and the statute of limitations. We decline the invitation to rule on these matters and believe that both subjects would benefit from further briefing and development in the superior court. The McLaughlins have also challenged as excessive the award of fees and costs. Our reversal of the grant of the motion to dismiss moots this issue.

## VI.  CONCLUSION

For the above reasons, the judgment is REVERSED and this case is REMANDED for further proceedings.

---

**67.** AS 09.17.900. In 1997 AS 09.17.900 was amended to include intentional acts or omissions.

**68.** *See Borg–Warner,* 850 P.2d at 633–34.

**69.** *Id.* at 633.