UNIVERSAL MOTORS, INC., Petitioner,

v.

Daniel C. NEARY, Bobbie L. McDonald, Sr., Bobbie L. McDonald, Jr., and Claudette M. McDonald, Respondents.

No. S–8349.

Supreme Court of Alaska.

Aug. 20, 1999.

Scott J. Nordstrand, Owens & Turner, P.C., Anchorage, for Petitioner.

Roger E. Holl, Anchorage, for Respondent Daniel C. Neary.

Before MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## *OPINION*

MATTHEWS, Chief Justice.

On July 30, 1994, Daniel Neary was injured when he was struck by a vehicle driven by eighteen-year-old Bobbie McDonald, Jr., who lacked both a driver's license and insurance. Neary sued McDonald for negligence and McDonald's parents for negligent entrustment. After the suit against McDonald's parents was dismissed by summary judgment,[1] Neary filed a separate suit against Universal Motors alleging that it had negligently sold the vehicle involved in the accident to an unlicensed driver. The actions were subsequently consolidated. Universal moved for summary judgment, contending that the superior court should adopt the "one-action rule." From the denial of this motion we granted Universal's petition for review. We now affirm.

Universal describes the one-action rule as follows: "[I]f a plaintiff brings a tort action against one potential tortfeasor and the merits of that claim are adjudicated by a court or jury, he may not subsequently bring a separate tort action against another potential tortfeasor for the same accident and injuries." Universal argues that the 1989 version of our comparative fault statute requires the one-action rule by implication.[2]

The 1989 statute provided:

Apportionment of Damages.

(a) In all actions involving fault of more than one party to the action, including third-party defendants and persons who have been released under AS 09.16.040, the court, unless otherwise agreed by all parties, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings, indicating

(1) the amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and

(2) the percentage of the total fault of all of the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under AS 09.16.040.

(b) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault, and the extent of the causal relation between the conduct and the damages claimed. The trier of fact may determine that two or more persons are to be treated as a single party if their conduct was a cause of the damages claimed and the separate act or omission of each person cannot be distinguished.

(c) The court shall determine the award of damages to each claimant in accordance with the findings, subject to a reduction under AS 09.16.040, and enter judgment against each party liable. The court also shall determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault.

(d) The court shall enter judgment against each party liable on the basis of several liability in accordance with that party's percentage of fault.

Specifically, Universal contends that "[t]he only reasonable method of litigating in a pure comparative fault jurisdiction ... is to require the parties to bring all potential tortfeasors into a single action." It argues that the one-action rule promotes judicial economy, avoids inconsistent judgments, and precludes double recoveries.

In our view AS 09.17.080 does not mandate a single action for each injury or accident. Subsection (a) of the statute derives from Section 2(a) of the Uniform Com-

---

**1.** See *Neary v. McDonald,* 956 P.2d 1205 (Alaska 1998).

**2.** The 1989 statute was enacted by initiative and was codified as AS 09.17.080. It has been super-

seded by a statute, also codified as AS 09.17.080, that was enacted in 1997. The 1997 statute differs substantially from the 1989 version.

parative Fault Act of 1977.[3] The comment pertaining to the latter indicates that the drafters of the Uniform Act contemplated the possibility of subsequent suits against other potential tortfeasors:

> The limitation to parties to the action means ignoring other persons who may have been at fault with regard to the particular injury but who have not been joined as parties. This is a deliberate decision. *It cannot be told with certainty whether that person was actually at fault or what amount of fault should be attributed to him, or whether he will ever be sued,* or whether the statute of limitations will run on him, etc. *An attempt to settle these matters in a suit to which he is not a party would not be binding on him.*[4]

In construing statutes taken from model acts we generally regard the commentary to the model act as a reliable guide to the statute's meaning.[5] We so regard the commentary quoted above and conclude that our statute was not intended to preclude separate actions against different tortfeasors.

Our conclusion is supported by *Selchert v. State.*[6] Iowa's comparative fault act is also modeled on the Uniform Act. The *Selchert* court declined to interpret the act as encompassing a one-action rule, observing that to do so would be "to rewrite our comparative fault act."[7]

We also do not accept Universal's argument that the one-action rule represents the only reasonable method of conducting litigation in a comparative negligence jurisdiction.

From a judicial economy standpoint, it is generally true that one trial is preferable to multiple trials. But existing parties already possess a strong incentive to name all potential tortfeasors. As we observed in *Benner:*

> Both plaintiff and defendants will have significant incentive for joining available defendants who may be liable. The more parties joined whose fault contributed to the injury, the smaller the percentage of fault allocated to each of the other parties, whether plaintiff or defendant.[8]

Further, one drawback of the one-action rule is that it may result in the needless joinder of parties whose fault is remote. Whether the benefit from the additional incentive for joining all potentially liable actors supplied by the one-action rule is outweighed by the detriment resulting from the complications of multi-party litigation is a policy question best left to the legislature.[9]

3. 12 U.L.A. 126 (1977).

4. *Benner v. Wichman,* 874 P.2d 949, 958 n. 19 (Alaska 1994) (quoting Unif. Comp. Fault Act § 2 cmt., 12 U.L.A. 50 (Supp.1993) (emphasis added)).

5. *See Matter of D.D.S.,* 869 P.2d 160, 164 n. 5 (Alaska 1994); *Johnson v. Schaub,* 867 P.2d 812, 817 n. 11 (Alaska 1994); *Crews v. Crews,* 769 P.2d 433, 435 (Alaska 1989); *Armour v. Alaska Power Auth.,* 765 P.2d 1372, 1374 (Alaska 1988). *See also Slager v. HWA Corp.,* 435 N.W.2d 349, 352 (Iowa 1989) (citing 2A N.J. Singer, *Sutherland Statutory Construction* § 52.05, at 546 (revised ed.1984)).

6. 420 N.W.2d 816 (Iowa 1988).

7. *Id.* at 820.

8. *Benner,* 874 P.2d at 958 n. 19 (quoting Univ. Comp. Fault Act § 2 cmt., 12 U.L.A. 50 (Supp. 1993)).

9. One commentator who advocates the use of three doctrinal devices to mandate what is essentially a one-action rule in a broad variety of contexts in order to avoid multiple suits nonetheless cautions:

> What I have said here goes to the relative merits of the devices considered. Beyond that, I must acknowledge the real possibility that all of them may carry evils worse than the problem to which they are addressed. Use of any of them may foment assertion of claims that otherwise would never be litigated and thereby increase the adjudication burden of the courts.... Even if the devices do not generate additional claims, they may deter settlement of existing ones. Moreover, they may increase the expenses of the parties, for example, by increasing recovery.
>
> I do not know how to assess these risks, but their presence argues for caution in developing a response to the multiplicity problem. Further experimentation in all three directions therefore seems desirable to me. It is as well, perhaps, that the responses thus far have been ad hoc and tentative. The remedy is sometimes worse than the disease.

John C. McCoid, *A Single Package for Multiparty Disputes,* 28 Stan. L.Rev. 707, 728 (1976).

■ We remain unconvinced that the one-action rule represents a necessary guard against inconsistent results or double recoveries. Universal hypothesizes that a creative plaintiff (P) could sue one defendant (D1), obtain an award holding that he and D1 are both fifty percent at fault, subsequently sue a second defendant (D2), obtain another fifty-fifty allocation and thus recover one hundred percent of his total damages. Applying customary rules of offset and collateral estoppel, however, would prevent this result.

■ Starting with Universal's hypothetical, assume $1,000,000 in damages in the first trial. This would have resulted in a $500,000 award against D1 who is fifty percent at fault.[10] In the second trial D2 is entitled to a ruling based on collateral estoppel that P's damages are not greater than $1,000,000.[11] In the second trial there should be a determination of the comparative fault not only of P and D2, but also of D1. Even though D1 is not a party to the second case he functionally occupies the position of a "person[ ] who has been released" under AS 19.17.080(a). D2 would also be entitled to a ruling based on collateral estoppel that P and D1 are negligent. But the percentage of their total fault when that of D2 is also considered cannot be specified, for that issue has not been litigated. Now assume the jury in the second trial finds total damages to be $1,000,000, P to be

fifty percent at fault, D1 to be ten percent at fault and D2 to be forty percent at fault.[12] Except for the first trial, D2 would have to pay P $400,000. But P has already received $500,000 and D2 is entitled to offset this amount against the award.[13] Thus, under this example P obtains no double recovery and the result is not inconsistent with the first trial.

Now change the findings in the second trial so that P is found twenty percent at fault, D1 is ten percent, and D2 is seventy percent. Except for the first trial, D2 would have to pay P $700,000. But since P has already received $500,000 from the first trial, D2 is entitled to an offset of this amount and will only be liable for $200,000. Thus P's total recovery is $700,000. P's recovery is in no sense double, and the second judgment is not inconsistent with the first, for the fault of D2 was not considered in the first trial.[14]

■ In summary, AS 09.17.080 does not contain or require an implied one-action rule. To the contrary, the drafters of the model act upon which it is based anticipated the possibility of more than one action. Further, whether the overall interests of judicial economy are advanced by the one-action rule remains unclear, and the rule is unnecessary to prevent inconsistent results and double recoveries. For these reasons we conclude

10. In the first action D2's fault was not assessed because he was a non-party. *See Benner,* 874 P.2d at 958.

11. The elements of collateral estoppel, or "issue preclusion," are:

(1) the party against whom the preclusion is employed was a party to or in privity with a party to the first action;
(2) the issue precluded from relitigation is identical to the issue decided in the first action;
(3) the issue was resolved in the first action by a final judgment on the merits; and
(4) the determination of the issue was essential to the final judgment.

*Renwick v. State, Bd. of Marine Pilots,* 971 P.2d 631, 634 (Alaska 1999) (citing *Jackinsky v., Jackinsky,* 894 P.2d 650, 654 (Alaska 1995)).

12. We cannot precisely duplicate Universal's hypothetical here because the jury has to find D1 at least slightly at fault because of the collateral estoppel effect of the first judgment.

13. *See Norcon, Inc. v. Kotowski,* 971 P.2d 158, 171 (Alaska 1999) (citing *Navistar Int'l Transp. Co. v. Pleasant,* 887 P.2d 951, 957–58 (Alaska 1994) (offsetting plaintiff's recovery against second defendant by amount of recovery against first defendant)).

14. The theoretical problems with the second trial are that D1 paid too much and D2 too little. But those problems exist even if there is no second action and thus are not cured by the bar imposed under the one-action rule. Common law contribution in favor of a defendant who has paid more than his comparative share of damages would help to address these problems. *See* Restatement (Third) Torts: Apportionment of Liability § 33, cmt. f. (Proposed Final Draft (March 22, 1999)) ("[A] severally liable defendant might be sued with less than all of the relevant persons and be liable for more than its own percentages of responsibility and therefore be entitled to contribution."). But whether this remedy is available is not a question presented in this case and we express no view on it.

that the trial court did not err in refusing to grant summary judgment to Universal.[15]

AFFIRMED.

15. The trial court was mistaken in one respect in its discussion of Universal's one-action contention. The court suggested Universal would be bound by the earlier ruling that exonerated Mc- Donald's parents from fault. But because Universal was not a party to the earlier action, it is not bound by the determinations made there.